Kermit C. LEONARD and Arthur E. Swaer, Plaintiffs-Appellees,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.

No. 11949.

United States Court of Appeals Seventh Circuit.

May 21, 1957.

Rehearing Denied June 18, 1957.

Major, Circuit Judge, dissented.

Joseph A. Roper, Gallitzen A. Farabaugh, South Bend, Ind., for appellant.

James H. Pankow, Roland Obenchain, Jr., South Bend, Ind., for appellee.

Before MAJOR, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In plaintiffs' action to recover damages caused by the alleged negligence of defendant, a jury returned verdicts in favor of plaintiffs, upon which judgments were entered. Defendant has appealed therefrom.

The errors relied on are the refusal of the court to sustain defendant's motions for a directed verdict and for judgment notwithstanding the verdict and the refusal of the court, in the alternative, to sustain defendant's motion for a new trial because of error in the giving of certain of plaintiff's instructions, error of the court in failing to exercise its discretion with respect to the weight of the evidence, or in abusing its discretion with respect thereto.

A collision took place between a trailer truck driven by Leonard and a steam engine of defendant about 9:45 P.M. on May 4, 1953 at the grade intersection of defendant's track with U. S. Highway 20 in St. Joseph county, Indiana, which crossing was not within the limits of any municipality. The engine was pulling 14 freight cars and a caboose. The railroad consisted of a single track running southwest and northeast and the highway ran east and west. The train was traveling northeast and the truck was proceeding west. Leonard swerved and attempted to go around and in front of the engine. A collision occurred between the trailer and the front end of the engine five feet northerly of the center line of the highway when the right wheels of the truck and trailer were off the concrete portion of the right (north) side of the highway. Leonard was driving at a speed of 35 to 40 miles per hour at the time of the collision. The pavement was dry.

There were no lights of any type at the crossing. There was a line of telephone poles along the southeast side of the railroad track, extending for several miles on either side of the crossing. There was some foliage on the southeast quadrant of the crossing just beyond the right-of-way, and a wooded area further back. Leonard had never been over this particular portion of U. S. Highway 20 prior to the time of the collision.

There was, 430 feet east of the crossing, on the north side of the highway, a disc reflectorized sign, the background

of which was orange in color with a black cross thereon and the letters "R. R." in bold black type. There were two cross buck signs, one at the northeast corner and the other at the southwest corner of the crossing. The surrounding area was level. There were no buildings near the crossing.

There was only one other vehicle in the vicinity before and at the time of the accident.

From a point 300 feet east of the crossing a traveler going west on the highway had a view of 250 feet southwesterly along the track, and from a point 145 feet east of the crossing he had a view of 1000 feet in that direction. When 50 feet east of the track, that view was ¾ of a mile.

Nine feet above the rail the engine carried a headlight, and there was evidence that it was burning until the accident. Leonard testified that he did not see the headlight when he saw the engine about ten feet from the crossing. The bell on the engine was ringing from the town of Mishawaka to the scene of the accident. There was evidence that 200 feet from the crossing the engineer began whistling at spaced intervals until the engine was about 30 feet from the crossing and that the whistle was loud and shrill. There was also evidence by a trainman that he did not hear the train whistle and there was other testimony that the whistle was used to signal the train crew members located in the caboose. Leonard testified that he did not hear any whistle or bell.

The engineer testified that he always used a fusee at this crossing, to protect the public and the train against traffic. When the engine was 200 feet from the crossing the engineer saw Leonard's truck which was 500 to 600 feet from the crossing, and thereupon started to wave a fusee in an arc in the direction of the truck. This, as well as the whistling and bell ringing, continued until the engine was approximately 30 feet from the crossing and going 12 to 15 miles per hour, when the engineer dropped the fusee, shut the throttle, put the brake valve into emergency, and turned on the sanders.

While vehicular traffic was then average, Leonard was meeting cars almost all the time. He did not see the orange disc sign or the cross buck signs. He did not see any fusee and he did not discover the train until it was about ten feet southwest of the crossing when he attempted to go around in front of the engine. When about 200 to 300 feet east of the crossing, he noticed for the first time lights blinking on an oncoming truck, which was either stopped or coming to a stop. When he saw those lights, he did not reduce his speed, change the course of his truck, or brake, but continued straight ahead at the same speed. He further testified that he either braked at the time he saw the blinking lights of the oncoming truck or at the time he saw the train.

Leonard was employed by Swaer.

The foregoing facts are established by the evidence viewed in a light most favorable to plaintiffs.

1. The pleadings presented issues as to the alleged negligence of defendant and the alleged contributory negligence of plaintiffs.

In view of the foregoing evidence, questions of fact were presented bearing on those issues. These questions the district court properly submitted to a jury. The court would not have been justified in deciding these questions, as a matter of law, on defendant's motion for a directed verdict or on its motion for judgment notwithstanding the verdict. See Miller v. Pennsylvania Railroad Co., 7 Cir., 233 F.2d 535.

Accordingly we hold that no error was committed by the district court in overruling those motions.

2. We find no error in the giving of certain instructions, tendered by plaintiffs, which are now criticized by defendant.

24

3. In denying defendant's motion for a new trial, the trial court stated that, under the evidence, the jury could have found for the plaintiffs or for the defendant. We agree with that statement and, for that reason, we believe that the court's action in that respect is not vulnerable to defendant's contention that it was the duty of the trial judge to set aside the verdicts on the ground that the evidence was overwhelmingly against it and that a miscarriage of justice resulted by permitting the verdicts to stand.

For the reasons herein stated, the judgment of the district court is affirmed.

Judgment affirmed.

MAJOR, Chief Judge (dissenting).

In my judgment, the proof was insufficient to take the case to the jury on either the issue of negligence or contributory negligence. Judge SCHNACK-the facts and, as his opinion states, those ENBERG has made a fair statement of most favorable to the plaintiffs. On the facts thus stated, it is not discernible to me what negligence could properly be found against the defendant. The train was traveling at a moderate rate of speed and gave more than adequate warning of its approach to the crossing where the collision occurred. More than that, plaintiffs' own testimony demonstrates as a matter of law that the driver of the truck was guilty of contributory negligence. Even though he was a stranger to the crossing he had adequate warning as to its existence. His own failure to look was the sole reason for his claimed ignorance in that respect. If he had looked, he could have seen the approaching train with its bright headlight, and if he had listened, he could have heard the bell and the whistle. The driver, however, according to his own testimony, without looking and without listening, drove his truck in front of the train. The exercise of ordinary care on his part would have avoided the collision. If a railroad is ever entitled to a directed verdict, it is in this case. I would reverse the judgment.